May I proceed? Yes, please. Obviously, the Supreme Court is not messing around when it comes to a Second Amendment analysis. We've seen after Bruin, we've seen confirmed by Rahimi that there needs to be historical analysts to make a determination of whether or not it goes with our firearm tradition prohibition. That was not done in this case at all. This Court, at the very least, should remand this case back to the district court because the district court relied solely upon Vongze and Dugan in saying that it was presumptively lawful for them to be able to prohibit Mr. Stennerson from possessing a firearm. This court, of course, in the Duarte three-panel decision that is going to be decided here in December, went through that analysis and essentially stated that that's outdated. That is not what the government wants to do. The government wants to stick with the way things were. This has changed. Bruin has made it very clear that this is a sea change in Second Amendment analysis. Counsel, because this is de novo review, could we do the analysis ourselves? I think this Court certainly can. Okay. And I would ask the Court to entertain that. But at the very least, it should be remanded for the proper analysis to be taken forth by the district court or by Your Honors. If we undertook that analysis, Counsel, in your view, how should that analysis proceed? Well, I think you have to go with what is stated in Rahimi, and you have to go on whether or not the government carries their burden on whether or not their historical analog is relatively similar. And in this particular case, there was no analysis, so we can assume. If we do that, is there a historical analog that we could look to to compare the statute to? I would say that the government is going to argue in-talks laws. And the in-talks laws, they would say, are relevantly similar. And it doesn't have to be a historical twin, but once again — But the Court did say it does not have to be a historical twin. Correct. Correct. But the Court also did state that in examining it, there must be an analysis of the why and the how. And even if the how or the why extends beyond what was at the founding for the Second Amendment, it doesn't pass constitutional muster. I have a predicate question on the 922G3 issue, and that is, I read the briefing as you making a facial challenge, and then in your supplemental briefing, you reference an as-applied challenge. Well, I think that's difficult to ascern, because we applied at the district court level, we argued as an applied-to challenge. Where in the record can you point to — so I also didn't find that to be clearly established in the district court. And the district court didn't go through any analysis whatsoever. But you're arguing — But I'm trying to get at, what kind of claim are we looking at here? Are we looking at a facial claim, or are we looking at an as-applied claim, because the analysis is different? Yes. And I would argue as though we're looking at both here today. So my follow-up question, then, is where in the record shows me that we have a properly preserved as-applied challenge? That was done in the briefing. That was done for the motion to dismiss on the case. It was also brought up in — excuse me. It was also brought in the opening brief on this case, where we talked about as the applied-to challenge. And I know what the government's perception is. The government's perception is, well, he pled guilty to that, so thereby he admitted that he was an addict. Well, there was no analysis done whatsoever by the district court, once again relying upon Dewey and then Vong's eye. And if you take a look at the record on this case in the briefing that was put in the brief, we certainly talked about the as-applied-to challenge based upon the facts that were in relation to the arrest of Mr. Stenerson in March of 2022. So I would argue — So the motion to dismiss below is where you want me to look. And also in our opening brief. Opening brief here.  On appeal. That doesn't help you. No. In terms of preserving it in the district court. Correct. So in terms of preserving it in the district court, you're telling us we should look to the motion to dismiss, and that's the only place we can look to for the preservation of that issue.  And what the district court did is didn't go through any analysis whatsoever on that particular issue. He pled guilty pursuant to a conditional plea agreement on that case. There was nowhere in the plea agreement that he was waiving his applied-to challenge. So — and I think that the as-applied-to challenge — Well, I mean, waiver and forfeiture are different. So waiver might not exist in the sense of, like, sort of an affirmative statement, I know that this claim exists, but I'm not pursuing it. Forfeiture is you just didn't, you know, string — keep raising it at all points of the process. I would argue that we did argue it in the motion to dismiss. That was denied. It was brought forth and preserved by our argument in the opening brief on this case. So I do believe the as-applied-to challenge has been preserved for this court. So, counsel, if we disagree with you and determine that the as-applied challenge was not preserved, then what's your position on the issue of facial challenge? Well, our issue on the facial challenge in regards to G-3, specifically, if we take a look at what the government is probably going to argue is different from counsel. But, counsel, I would appreciate it if you not tell us what the government is going to argue, but tell us what you are arguing. I'm going to argue as though that the facial challenge on this particular case is out of bounds. Because if you take a look, it's not relatively similar to Intox laws. And the reason why — But that's an as-applied argument. Also the why and the how that goes back into talking about what Rahimi is. And it's specifically related to a G-3 analysis, the historical analog being the Intox laws. You got drunk. Okay? You got drunk. We took away your firearm. Guess what happens? You get your gun back the next day when you sober up and have breakfast. That's not what happens with this. It is not relatively similar because we go back to its contemporaneously, its extended period of time, its regular use. What does that even mean? It means it has to be doing at that particular time over a period of time, and then also whether or not you're doing it regularly. So I didn't smoke crack today so I can have a firearm, right? And I believe that that goes into a facial challenge because it's the historical analog that the government wants to preserve. How would you distinguish? I mean, the Connolly case took this up. The Fifth Circuit took this issue up in Connolly. And if I'm remembering correctly, the defendant survived the as-applied argument, but not the facial argument, because the Court reasoned, as the Supreme Court has instructed, the facial challenge is the hardest one to make. You've got to be able to show that there's no lawful application. And the Fifth Circuit reasoned that you could have circumstances where somebody is presently intoxicated. This law is applied to that person, and that would be proper, even under the historical analogs that you've referenced a couple of times. Why is Connolly wrong? Well, Connolly also based upon the fact that the individual was presently intoxicated. And once again, we are arguing today that there's an apply-to challenge is reserved for today. Right. So set aside the as-applied. We're now talking facial for a minute. If there is a lawful application of this statute, even if it's not all the Why is Connolly wrong? Well, Connolly, I do not believe would be wrong if there was an analysis stating that it was historically similar to a firearms tradition. So I'm not arguing that Connolly is wrong. But what I am saying is, though, that the how portion, as stated is in Rahimi, is not satisfied when taking a look at the historical analog of intox laws. So I see that I'm a little bit over my time. Well, no, you have two minutes left. Okay. I guess before you sit down, I really want to talk about the other statute at issue in this case, which is 922N. Correct. Again, I assume your position, at least today, is that you're bringing both a facial and an as-applied challenge to that provision?  So on that one, Perez-Garcia clearly speaks to the issue that's going on with that statute. My question for you is really what do we do with Perez-Garcia in light of Rahimi? Perez was decided before Rahimi. Does it survive? No. I don't think that it does because Rahimi was dealing with a narrow issue on whether or not there was a judicial determination of dangerousness. Now, on Perez-Garcia, it's a different set of facts that we have here because the individuals were charged in district court. They were released. And then one of the prohibitions in their pretrial release is they could not carry a firearm. However, there was a judicial determination on that case at the modification for the release conditions by a United States magistrate saying that the individual was dangerous. That's not what we have in this particular situation. In this particular situation, Mr. Stenerson was charged in state court with criminal possession of dangerous drugs and also charged with burglary. And I can tell you the way that it works in state court at a catechol calendar setting is that a judge, a state district court judge, is given an affidavit and information, reads it, grants leave. Leave for the case to go forward. Essentially what the State is doing, that's their grand jury proceeding. And the grand jury and also the state district court doesn't make a determination on whether or not an individual is dangerous. So that argument makes a lot of sense to me. And there are certainly strong aspects of Rahimi that suggest a finding of dangerousness is sort of a key point of the majority's reasoning in that case. But then they throw out this sentence. We do not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by the legislature to present a special danger. So they leave open the possibility of not a judicial finding, but a legislative finding based on a category. Why doesn't this statute fall within that opening that the Supreme Court left? Well, it's interesting because the Rahimi court all went through the Bruin analysis, every single one of the judges. And I'm not disputing with Your Honor that that line is there. It certainly is there. But nobody there in Rahimi, which was dealing with the G-8 issue, said, hey, legislature's decided as though that if an individual is deemed to be a threat to his intimate partner, that's not what they did there. They went through the whole analog analysis every single one of the justices did. So that's what I would ask this court to do in relation to Ann also. Thank you, counsel. You've exceeded your time, but we'll give you a couple of minutes for rebuttal. When you return, would you please point us to the language in your brief in support of the motion to dismiss that preserves the as-applied challenge? Correct. Thank you. We'll hear from the government. Good morning, counsel. Good morning, Your Honors. May it please the Court, Tim Tatarka of the District of Montana on behalf of the United States. I'll begin with I do believe that this is clearly a facial challenge. I would recommend the Court's attention to the opening brief at pages 12 and 13 where the appellants clearly identify the Second Amendment challenge as a facial challenge. And then, of course, throughout the discussion of that argument, there is nothing in the Second Amendment argument that can be deemed or shown to be an as-applied challenge there. And I think there is, looking at the Court below, the briefing there, again, with respect to the Second Amendment challenge, there is nothing that raised an as-applied challenge with respect to that. Is there anything in the District Court's order that would give us some sort of clue that the District Court understood that there was an as-applied challenge being made? There is not, Your Honor. I mean, the counsel is correct. The District Court's order was decided at a very high level, looking at Fong Say and Dugan as precedent. There is nothing there that indicated the Court went beyond that and looked at it as applied. And as this Court recognized, and even the Fifth Circuit in Connolly recognized, although we disagree with Connolly's application of the law as applied, acknowledged that there is looking at the language in light most favorable to the constitutionality of the statute, there definitely is historic analogs. Again, we think unquestionably those analogs are broader than that, but at least there is some constitutional applications. If I understand opposing counsel's argument correctly, they would acknowledge that there are historical analogs regarding dispossession while someone is intoxicated, but they're arguing that there is an analogy in terms of the why of the current law, but not so much in the how in terms of criminalizing possession. Can you respond to that? Sure. As this Court found in Alanes, that drug abuse is, contemporary drug abuse is a new context and requires a broader analysis. So just as owning a semi-automatic handgun with a 15-round clip is analogous to owning a musket or a saber, the dangers of methamphetamine abuse, which is at issue here, are analogous but not the same as colonial, intoxication with colonial applejack. The danger that Congress found was not limited to the intoxication, period of intoxication, and Mr. Stinnerson's case is a good example of that. Mr. Stinnerson acknowledged that his other criminal activity, his breaches of the peace, were in relation to his drug abuse. And so looking at it as an analog rather than an identity, that is analogous. It is the period in which the individual is dangerous. And as this Court noted— I think you're answering a slightly different question than the one they asked, and it's fine, that I just want to clarify. Because I think you're addressing the criminalization of possession during periods where the defendant is not actually intoxicated. My question is a little bit different in terms of, you know, let's say the defendant is intoxicated. I think the argument is in the historical analog. They would have only taken away the firearms while— they would have taken away the firearms. They wouldn't have essentially declared him to be a criminal felon and sent him to prison for possessing the firearms while intoxicated so that essentially the criminalization and punishment goes far beyond the historical analog. I think that's the argument. I see it, Your Honor. And what I would say to that is that is similar to the argument that was made by the dissent in Rahimi that sort of said there has to be a match between the, you know— you couldn't sort of mix and match between the various historic analogs, the surety laws versus the risks related to the surety laws versus the punishment in the going armed laws. And that was rejected 8-1. And I think that's the same issue here, and I would recommend the Court's attention to Justice Barrett's concurrence where she said we're just looking at the general principles here. We don't want to bind 21st century legislators to 18th century policy decisions. Again, the danger posed by the methamphetamine abuse here is analogous but different than the issues of drunkenness in colonial times, and therefore the punishment is analogous but different. I do want to address 922 in. Again, this is a facial challenge, so the Court needs to look at the conduct that is most likely to be constitutional, and I think that falls easily within Perez-Garcia. So do you not see any tension between Perez-Garcia and Rahimi? I don't, Your Honor. I certainly don't think this Court could find that it is clearly irreconcilable when Rahimi expressly leaves open the question of the legislature's disarming groups because they pose a special danger of misuse of firearms. That's exactly the question that this Court answered in Perez-Garcia. There is a difference between the statute at issue in Perez-Garcia and the statute at issue here in that, however perfunctory it might have been, the provision at issue in Perez-Garcia did involve sort of a judicial moment, a judicial opportunity for a finding of dangerousness because you're tailoring release conditions for a person based on the nature of their case, etc., and that is not here. There is no moment for that. It's just a categorical ban. Sure. But I would recommend the Court's attention to Perez-Garcia relies on two independent grounds, right? The Court looked at both the history regarding bail and then separately the history with respect to dangerousness, and this statute, 922N, falls clearly within Perez-Garcia with respect to its logic about the history of bail. The logic of Perez-Garcia is in colonial times or at the founding, the bail was not a right, has never been a right. But it was always an individualized decision. Well, at least it was generally not available in terms of capital cases. And I don't know the answer to the question. I can't respond to whether or not it was ever in statute that there would be no bail for capital cases. But even beyond that, even if you assume something less than jail, at the very least, we know that surety laws were analogous in terms of putting protections on folks who were under indictment. What's your opinion on whether this case is affected by Dorte on 922N? Again, I think Perez-Garcia controls here. I mean, the court obviously could hold this case for Dorte, but I don't know that that analysis is going to change the fact here. Again, as a facial challenge, again, that means if there's any constitutional application, so apply it to a capital murder case, you would have no question here at a facial level. Dorte is potentially going to speak to who is included in the people. Is the government's position here that that requirement is met, so that's a reason why we don't need to wait for Dorte? I do think under Perez-Garcia, the folks under indictment are included in the people. That could change under Rahimi, possibly. So again, the court is absolutely free to hold it and see what happens in Dorte, but I think the court can answer it under present law under Step 2. And so the question as to whether or not they're a part of the people isn't necessary for the court to... Well, the way I understood the analysis, you don't get to Step 2 unless you've answered Step 1. If you say that the Second Amendment doesn't apply, then we don't have to get to Step 2 at all. No, I agree, Your Honor. If the court... But the court could assume that Step 1 applies and reject this challenge on Step 2. Thank you, counsel. Thank you, Your Honor. Let's have two minutes for rebuttal. Thank you, Your Honor. I'm pointing to the excerpts of record, page 74, where we're talking about the statute being vague and also as applied to Stenderson, there is a... Right, but that's vagueness. That's facial. You say as applied, but you do no as applied analysis. We say that no controlled substance was recovered from Mr. Stenderson's person when the police seized the firearm. No evidence was obtained. Mr. Stenderson was on a controlled substance on the night of March 30th of 2022. That's going directly into the facts that happened with Mr. Stenderson at that time. So I would argue that the as applied to challenge was brought up in the district court. And, of course, what the district court did on this case. The standard is whether or not it was sufficiently raised for the district court to rule on it. And so on page 12, you specifically talked about he can maintain a facial challenge, but you didn't talk about that he can maintain an as applied challenge. I would just respectfully state that it was brought up in the dismissal motion at the district court level. And, of course, we're also knowing what the district court did here. So if I understand you correctly, you're saying just by arguing the facts, you implicitly raised an as applied challenge. But are you conceding that you did not explicitly say that you were raising an as applied challenge in your motion to dismiss? I would say that we did raise as applied to challenge in our brief motion to dismiss. Where are the words in the Second Amendment challenge? I'm not talking about the vagueness argument, which is a different claim. But in your Second Amendment claim, do you explicitly say that you are making both a facial and as applied challenges? We state that facial and as applied to Standerson. Is it crystal clear? No. Facial as applied is what you're saying? Facial and as applied. Where exactly? We're stating right here on, I go back to excerpts of record, page 74. And I think also in relation to this, what is important on this question is that there was no analysis done whatsoever by the district court because it was relying upon Dugan, which is irreconcilable with Bruin and is certainly irreconcilable with Rahimi. Counsel, let's go to your opening brief. Where in your opening brief did you discuss an as applied challenge? I believe, if I may go back to counsel table for just a moment.  Thank you. I'm looking at page 12 where you summarize your argument. You can bring your brief to the lectern. Thank you. I do not believe it's specifically stated in the summary. I would agree with that. There's also a section where we talk about the specific facts as replied to Mr. Stenerson. That's on page 37 of our opening brief. Once again, we talk about that there was no controlled substances found from him on that day, that there was no officer observed. They didn't observe him to be underneath any intoxicants. That was all raised. It was also raised in our brief on the motion to dismiss. Well, we're talking about your opening brief because the opening brief requirement is that you have to raise the issue and you have to discuss and give an analysis of the issue in your opening brief for it to be properly preserved for decision by this Court. So just stating the facts, that's a whole different section of the brief. The facts are a different section, but the analysis is supposed to contain cases, it's supposed to contain argument that goes to the issue. And so in this brief, I don't see where you gave us cases and gave us argument, legal argument regarding the as-applied challenge. And I think that that was properly done. I respectfully disagree. I believe that it was properly done on page 37. So, again, it's your argument that discussion of the facts suffices to give us, the appellate court, notice that that issue is before us. Well, it goes definitely to the temporal unit that is talking about the Rahimi analysis. And, once again, if a Second Amendment regulation, even for a permissible reason, goes outside the bounds of what was done at founding, and I believe that that's what we're arguing there, that it is unconstitutional. If we found that the as-applied challenge in the Second Amendment context was unconstitutional, I don't see why these laws are not constitutionally applied to the defendant. It's not relevantly similar. There's more relevant. I want it on the facts, because that's your legal argument. What exactly on the facts are you saying is missing here? There's no determination that he was presently intoxicated at the time when he was possessing of a firearm, which is required underneath the statute. We didn't have any proof as though that he was underneath the influence at that particular time. And, once again, I point that there was no... At which particular time? When he was arrested in March of 2022. You're saying that's the only moment of possession that counts? Well, if we're going to go relevantly similar, you have to be drunk in order for you to take away your firearms. If you have a couple of drinks... He admits to having, let's, I don't remember, sorry, the exact time period. Let's assume the record establishes the defendant possesses a gun for a month, and they also admit that, during that month, they are a daily user of methamphetamine. Why isn't it reasonable to infer that, during that month, at some periods of time, they were both intoxicated and possessing the gun? Well, if somebody is a daily drinker, for example, and you're operating a motor vehicle, they have to prove, though, that you were drunk at the time you were operating the motor vehicle. In the intox laws, they had to prove as though that you were drunk at the time. You're saying the intox laws were limited to someone literally using the gun, not just possessing it? Possessing it, using it any way you want to take a look at it. The main thing is that you had to be impaired by intoxicating substance, and I don't believe the record supports that Mr. Stenerson was at that particular time in March of 2022. All right. Thank you, counsel. Thank you. Thank you, counsel, for your helpful arguments. The case just argued is submitted for decision by the court, and we are adjourned. All rise.
judges: RAWLINSON, FORREST, SUNG